FILED
CLERK, U.S. DISTRICT COURT

NOV - 4 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

DAVID GREGORY YATES,                    )   NO. ED CV 08-398-AHM(E)
                                        )
                Petitioner,             )
                                        )
        v.                              )   ORDER ADOPTING FINDINGS,
                                        )
JOHN MARSHALL, Warden,                  )   CONCLUSIONS AND RECOMMENDATIONS
                                        )
                Respondent.             )   OF UNITED STATES MAGISTRATE JUDGE
                                        )
_____ )

        Pursuant to 28 U.S.C. § 636, the Court has reviewed the
Petition, all of the records herein and the attached Report and
Recommendation of United States Magistrate Judge.  The Court approves
and adopts the Magistrate Judge's Report and Recommendation.

        IT IS ORDERED that Judgment be entered denying and dismissing
the Petition with prejudice.

///
///
///
///

1        IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2   the Magistrate Judge's Report and Recommendation and the Judgment

3   herein by United States mail on Petitioner and counsel for

4   Respondent.

5

6        LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8        DATED: _____October 31_____ , 2008.

9

10

11   _____
                    A. HOWARD MATZ
12              UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAVID GREGORY YATES,                    ) NO. ED CV 08-398-AHM(E)
                                        )
            Petitioner,                 )
                                        )
      v.                                ) REPORT AND RECOMMENDATION OF
                                        )
JOHN MARSHALL,                          ) UNITED STATES MAGISTRATE JUDGE
                                        )
            Respondent.                 )
_____ )

        This Report and Recommendation is submitted to the Honorable

A. Howard Matz, United States District Judge, pursuant to 28 U.S.C.

section 636 and General Order 05-07 of the United States District

Court for the Central District of California.


                              PROCEEDINGS


        Petitioner filed a "Petition for Writ of Habeas Corpus By a

Person in State Custody" on March 21, 2008, accompanied by an attached

memorandum ("Pet. Mem."). Respondent filed an Answer on May 8, 2008.

Respondent also lodged, _inter alia_, Petitioner's habeas corpus

petition filed in the California Supreme Court, in In re Yates,
California Supreme Court case number S157389 and the California
Supreme Court's order denying a different petition filed by Petitioner
in In re Yates, California Supreme Court case number S156154.
Petitioner filed a Reply on May 22, 2008.

On May 27, 2008, the Court ordered Respondent to lodge with the
court Petitioner's habeas corpus petition filed in the California
Supreme Court in case number S156154 and the California Supreme
Court's order denying the petition in case number S157389.   On June 4,
2008, Respondent lodged these documents.

## BACKGROUND

An Information charged Petitioner with two counts of burglary in
violation of California Penal Code section 459 and one count of
receiving stolen property in violation of California Penal Code
section 496(a) (Clerk's Transcript ["C.T."] 72-74).   The Information
also alleged that Petitioner had suffered six prior convictions for
which Petitioner served prison terms within the meaning of California
Penal Code section 667.5(b) (C.T. 73-74).   A jury found Petitioner
guilty of receiving stolen property in violation of California Penal
Code section 496(a) (Reporter's Transcript ["R.T."] 207-08; C.T. 109).
The jury found Petitioner not guilty of the alleged burglary of a
storage shed (R.T. 207-08; C.T. 110).   The jury deadlocked on the
alleged burglary of a travel trailer, and the court declared a
mistrial as to that count (R.T. 206-08; 210; C.T. 111-12).   The court
found true the prior prison term allegations and imposed a sentence of

2

1 | eight years (R.T. 216, 222-24; C.T. 144-45, 147-48).

2

3 |     Petitioner appealed.  Petitioner also filed a petition for writ

4 | of habeas corpus in the Riverside County Supreme Court on July 9,

5 | 2007, which that court denied on July 20, 2007, stating that

6 | Petitioner should raise the issues in the petition in his pending

7 | appeal (Respondent's Lodgments 6, 7).  On July 31, 2007, the Court of

8 | Appeal ordered the abstract of judgment corrected to indicate that

9 | Petitioner was convicted by jury and not by plea, but otherwise

10 | affirmed the judgment (Respondent's Lodgment 8; see People v. Yates,

11 | 2007 WL 2183126 (Cal. Ct. App. 4th Dist. July 31, 2007)).

12

13 |     On October 1, 2007, Petitioner filed a habeas corpus petition in

14 | the Court of Appeal (Respondent's Lodgment 9).  The Court of Appeal

15 | denied the petition without opinion on October 4, 2007 (Respondent's

16 | Lodgment 10).

17

18 |     Petitioner filed a petition for review in the California Supreme

19 | Court on September 10, 2007 in In re Yates, case number S156154,

20 | seeking review of the Court of Appeal's decision affirming

21 | Petitioner's conviction (Respondent's Supplemental Lodgment 13).  The

22 | California Supreme Court denied this petition without opinion on

23 | October 17, 2007 (Respondent's Supplemental Lodgment 14).  Petitioner

24 | filed a second petition for review in the California Supreme Court on

25 | October 22, 2007 in In re Yates, case number S157389, seeking review

26 | of the Court of Appeal's denial of Petitioner's habeas corpus petition

27 | (Respondent's Lodgment 11).  The California Supreme Court denied this

28 | petition without opinion on November 28, 2007 (Respondent's

1 | Supplemental Lodgment 15).

2

3 | **FACTUAL BACKGROUND**

4

5 | The prosecution introduced trial evidence showing the following:

6

7 | Nancy and Richard Schuessler lived in a mobile home park in
8 | Riverside (R.T. 27, 48). The Schuesslers kept a travel trailer stored
9 | in a gated RV storage area within the park (R.T. 27). On August 9,
10 | 2005, Mrs. Schuessler was informed that someone had entered the
11 | trailer (R.T. 28). When Mrs. Schuessler arrived at the trailer, the
12 | trailer door was open (R.T. 28). Mrs. Schuessler noticed that a fire
13 | extinguisher kept on a bracket inside the front door was missing (R.T.
14 | 29-30, 37). Mrs. Schuessler entered the bedroom area and found that
15 | some change kept in a cup in a bedroom drawer, in the sum of about $12
16 | or $13, was missing (R.T. 30-31, 36). Also missing was a notebook
17 | which Mrs. Schuessler kept on a table in the front of the trailer
18 | (R.T. 31-33). Neither Mr. Schuessler nor Mrs. Schuessler had given
19 | anyone permission to enter the trailer (R.T. 29, 52).

20

21 | Carl Reynolds worked for the mobile home park (R.T. 57). On
22 | August 9, 2005, Reynolds arrived at work around 5:30 a.m. (R.T. 57).
23 | Around 6:15 or 6:30 a.m., Reynolds went to the enclosed storage area
24 | to retrieve the golf cart he used to patrol the park (R.T. 57-59, 77).
25 | Entry to the storage area was by means of a gate (R.T. 58). Reynolds,
26 | the property manager, the assistant manager, and people who stored
27 | recreational vehicles in the area had keys to the gate (R.T. 71).
28 | Just outside the gate was a large "40-yard" dumpster (R.T. 58).

4

1    Reynolds saw Petitioner in the dumpster, and believed Petitioner
2    was "dumpster diving" (R.T. 59). Reynolds told Petitioner that
3    Petitioner was on private property and should leave (R.T. 60).
4    Petitioner ignored Reynolds (R.T. 60). Reynolds also saw a black
5    Honda, which had been parked in one of the parking spaces in the area
6    for more than three days (R.T. 78). One of the Honda's doors was open
7    (R.T. 78).

8

9    Reynolds began to patrol the park (R.T. 60). About 6:30 or
10   6:45 a.m., Reynolds again saw Petitioner in the dumpster, and again
11   advised Petitioner to leave (R.T. 60, 77). Petitioner again did not
12   respond (R.T. 60).

13

14   Reynolds went out on the property to perform a few chores, then
15   returned to the dumpster area and again advised Petitioner to leave,
16   adding that Reynolds was going to call the police (R.T. 60).
17   Petitioner finally responded: "Fuck you. I don't have to do anything.
18   I am going to do what I want to do. I can't get my truck started.
19   Get the hell away from me." (R.T. 61).

20

21   Reynolds called the sheriff's department to report Petitioner's
22   presence and the presence of the Honda and a person in coveralls
23   Reynolds had seen on the property (R.T. 61, 78, 81). Subsequently
24   Reynolds saw a police car pushing Petitioner's truck out to the street
25   in front of the mobile home park (R.T. 62, 82). Petitioner was inside
26   the truck (R.T. 62).
27   ///
28   ///

1    Sometime after 8:00 a.m., Cynthia Knudson, the community manager,

2  received a call from the park's alarm company (R.T. 96).  Knudson

3  asked Reynolds to investigate (R.T. 97).  Reynolds entered his golf

4  cart and went down to the RV storage area (R.T. 62).  Reynolds did not

5  see Petitioner (R.T. 62).  Reynolds noticed that the doors of the shed

6  next to what used to be a laundry room, were open (R.T. 63).  The

7  locks had been cut and were lying on the ground, near a pair of bolt

8  cutters that had not been there earlier (R.T. 63, 65).  Inside the

9  shed, someone had pulled out the drawers of some filing cabinets and

10  had rifled through the workbench (R.T. 66).

11

12    Reynolds also noticed that the door of a travel trailer about

13  thirty feet away was standing open (R.T. 70-71, 84).  The door had not

14  been open when Reynolds had been in the area earlier that day (R.T.

15  71-72).  There was a hole in the surrounding fence which had not been

16  there the day before (R.T. 72-73, 84).

17

18    Reynolds returned to the office to get Knudson (R.T. 66, 80, 97).

19  On the way back to the storage area, Reynolds and Knudson encountered

20  Petitioner who was entering the property through the front entrance

21  (R.T. 66-67, 82, 97-98).  Reynolds and Knudson asked Petitioner where

22  he was going and who he was going to visit (R.T. 67).  Knudson told

23  Petitioner to leave or she would call the sheriff (R.T. 98).

24  Petitioner did not respond, so Knudson called the sheriff (R.T. 98).

25  Reynolds and Knudson followed Petitioner, who continued walking until

26  he reached a wall on the other side of the park from the storage area

27  (R.T. 67, 98-99, 105-06).  Petitioner jumped over the wall and walked

28  to a shopping center (R.T. 67, 99).

6

1      Petitioner then returned to the property through the entrance

2   (R.T. 68, 99).   Reynolds told Petitioner that the police were on their

3   way (R.T. 69).   Petitioner just kept walking, and walked over to the

4   back of the residence in space 131 (R.T. 69).   Petitioner began

5   pounding on the back door (R.T. 69, 99).   Reynolds "hollered out" to

6   the single, elderly resident: "Doris, don't open your door." (R.T.

7   69).   Petitioner told Reynolds that Petitioner thought perhaps one of

8   the keys Petitioner had in his possession might belong to the woman

9   because she had that type of vehicle (R.T. 86).   According to Knudson,

10   Petitioner spoke with the woman in space 131, telling her that

11   Petitioner had found some keys outside that might be hers (R.T. 108).

12

13      Deputy Randy Postoian arrived and searched a grocery bag

14   Petitioner was carrying (R.T. 69, 110).   Inside the bag was the

15   Schuessler's fire extinguisher (R.T. 110).   On Petitioner's person

16   Postoian found the Schuessler's notebook, $12.48 in change, and about

17   20 to 30 "pretty old" keys on a ring (R.T. 111, 113).   Entering the

18   trailer through the open door, Postoian found it ransacked (R.T. 112).

19   Mrs. Schuessler identified the fire extinguisher, notebook and change

20   as hers (R.T. 123).   Postoian said he did not recall seeing a

21   dumpster, and testified he, Postoian, did not know "what dumpster he

22   was talking about that he found items in" (R.T. 121-22).[1]

23

24      The park had frequent problems with people entering and going

25   through the dumpsters (R.T. 76).   Reynolds admitted suffering a

26    ————————————————

27      [1]   Although Postoian did not identify the "he" referenced
in this statement, one reasonably could infer that Postoian was
28  referring to Petitioner.

1   conviction for filing a false police report seventeen years earlier

2   (R.T. 89-90).

3

4        Andres Hernandez testified that, in January 2001, someone stole

5   Hernandez' pickup truck (R.T. 157).   In February, 2001, Hernandez

6   recovered the truck, which had been stripped (R.T. 157-58).   Hernandez

7   found a wallet with Petitioner's driver's license in the truck (R.T.

8   157).   Hernandez put the truck up for sale (R.T. 158).   Petitioner

9   came by and expressed interest in buying the truck (R.T. 158).

10   Hernandez asked Petitioner if Petitioner had stolen the truck, and

11   Petitioner responded: "Yes." (R.T. 159).

12

13        Petitioner did not testify.   The defense introduced no evidence.

14

15                          **PETITIONER'S CONTENTIONS**

16

17        Petitioner contends:

18

19        1.   The evidence allegedly was insufficient to support the

20   verdict (Petition, Ground One; Pet. Mem., pp. 1-5);

21

22        2.   Petitioner's trial counsel assertedly rendered ineffective

23   assistance by failing to call two witnesses: a defense investigator

24   and a "party/witness to the incident" (Petition, Ground Two; Pet.

25   Mem., pp. 5-6);

26

27        3.   The trial court allegedly violated Petitioner's right to a

28   fair trial and Due Process by permitting the introduction of allegedly

1  "unrelated prejudicial testimony from a non-relative party/incident

2  for the purpose of impeachment when Petitioner did not testify"

3  (Petition, Ground Three, Pet. Mem., pp. 6-7);

4

5       4.   The trial court allegedly violated Petitioner's Fifth

6  Amendment privilege against self-incrimination by instructing

7  Petitioner to cooperate with a fingerprint expert (Petition, Ground

8  Four, Pet. Mem., pp. 8-9); and

9

10       5.   The trial court allegedly did not address the issue whether

11  the prior prison term enhancements were proper because the evidence

12  assertedly did not show Petitioner served one year or more in prison

13  for each prior offense (Petition, Ground Five, Pet. Mem., p. 9).

14

15                        **RESPONDENT'S CONTENTIONS**

16

17       Respondent contends that the Petition is mixed because Grounds

18  One, Three, Four and Five assertedly are unexhausted.  Respondent

19  further contends that Petitioner is not entitled to a stay under the

20  standards set forth in Rhines v. Weber, 544 U.S. 269 (2005).

21  Respondent also contends Petitioner is not entitled to habeas relief

22  on the merits of his claims.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

DISCUSSION

I.    **The Petition is Mixed.**

    A.    **Governing Legal Standards**

     A federal court will not grant a state prisoner's petition for writ of habeas corpus unless it appears that the prisoner has exhausted available state remedies.  28 U.S.C. § 2254(b) - (c); Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  "Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." O'Sullivan v. Boerckel, 526 U.S. at 844.  The exhaustion requirement seeks to avoid "the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  Id. at 844-45 (citations, internal brackets and quotations omitted).

     State remedies have not been exhausted unless and until the petitioner's federal claims have been fairly presented to the state's highest court.  See Castille v. Peoples, 489 U.S. 346, 350-51 (1989); James v. Borg, 24 F.3d 20, 24 (9th Cir.), cert. denied, 513 U.S. 935 (1994).  A claim has not been fairly presented unless the petitioner has described in the state court proceedings both the operative facts and the federal legal theory on which his claim is based.  Duncan v.

10

1 | Henry, 513 U.S. 364, 365-66 (1995); Anderson v. Harless, 459 U.S. 4, 6
2 | (1982); Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999).  The
3 | petitioner must alert the state court that his claims rest on the
4 | federal constitution.  Howell v. Mississippi, 543 U.S. 440, 443-44
5 | (2005); Fields v. Waddington, 401 F.3d 1018, 1020-21 (9th Cir.), cert.
6 | denied, 546 U.S. 1037 (2005).  To do so, the petitioner "must make
7 | reference to provisions of the federal Constitution or must cite
8 | either federal or state case law that engaged in a federal
9 | constitutional analysis."  Fields v. Waddington, 401 F.3d at 1021
10 | (citations omitted); see also Howell v. Washington, 543 U.S. at 443-44
11 | (claim unexhausted where petitioner's state court petition did not
12 | cite the Constitution or any cases directly construing the
13 | Constitution); Peterson v. Lampert, 319 F.3d 1153, 1157-58 (9th Cir.
14 | 2003) (en banc).  Pro se petitions, however, "are held to a more
15 | lenient standard than counseled petitions."  Davis v. Silva, 511 F.3d
16 | 1005, 1009 (9th Cir. 2008) (citation, internal quotations and footnote
17 | omitted).

18 |
19 |      **B.   Ground One of the Petition Is Exhausted.**
20 |
21 |      In Ground One of the Petition, Petitioner challenges the
22 | sufficiency of the evidence to support his conviction.  Specifically,
23 | Petitioner contends that the evidence did not suffice to show that
24 | Petitioner knew the property he possessed was stolen.

25 |
26 |      The Court of Appeal rejected this claim on direct review (see
27 | Respondent's Lodgment 8, pp. 4-5; People v. Yates, 2007 WL 2183126 at
28 | *2.  Petitioner sought review of the Court of Appeal's rejection of

11

1 | his challenge to the sufficiency of the evidence in his petition for

2 | review filed in the California Supreme Court in In re Yates, case

3 | number S156154 (see Respondent's Supplemental Lodgment 13).

4 | Therefore, Ground One of the Petition is exhausted.

5 |

6 |     C.    **Ground Three of the Petition Is Unexhausted.**

7 |

8 |     In Ground Three, Petitioner alleges the trial court admitted

9 | assertedly prejudicial propensity evidence in the form of testimony

10 | concerning an incident which assertedly occurred five years prior to

11 | the instant offense.  Petitioner asserted this claim in his petition

12 | for review filed in the California Supreme Court in case number

13 | S157389 (see Respondent's Lodgment 11).[2]  Respondent contends,

14 | however, that Petitioner did not present to the California Supreme

15 | Court the federal nature of this claim.

16 |

17 |     In the section of his California Supreme Court petition for

18 | review in case number S157389 containing this claim, Petitioner did

19 | not mention specifically any federal constitutional guarantee (see

20 | Respondent's Lodgment 11, attached typed Court of Appeal petition,

21 | _____

22 |     [2]    The petition for review in case number S157389 stated

23 | that Petitioner sought review of the issues Petitioner presented
     to the Court of Appeal in In re Yates, California Court of Appeal

24 | case number E044189 (see Respondent's Lodgment 11, p. 1), and
     attached a copy of the petition filed in the Court of Appeal in

25 | case number E044189 (see Respondent's Lodgment 11).  The attached
     Court of Appeal petition consisted of a form petition and a typed

26 | petition.  Respondent does not contend that the claims asserted
     in the appellate brief attached to Petitioner's California

27 | Supreme Court petition in case number S157389 are unexhausted
     because they are contained in an attachment to the California

28 | Supreme Court petition rather than in the petition itself.

pp. 4-5).  At the end of that petition, Petitioner stated generally:
"The prejudicial effects of the aforementioned GROUNDS/ISSUES/
VIOLATIONS is clear, and without question violates the Fundamental
Fairness and Administration of Justice, Guaranteed by the United
States Constitution" (Respondent's Lodgment 11, attached typed Court
of Appeal petition, p. 6).  The "mere mention of the federal
Constitution as a whole, without specifying an applicable provision,
or an underlying federal legal theory, does not suffice to exhaust the
federal claim."  Fields v. Waddington, 401 F.3d at 1021 (citation
omitted).  "Nor is a federal claim exhausted by a petitioner's
mention, in passing, of a broad constitutional concept, such as due
process."  Id. (citation omitted); see also Gray v. Netherland, 518
U.S. 152, 163 (1996) ("it is not enough to make a general appeal to a
constitutional guarantee as broad as due process to present the
'substance' of such a claim to a state court"); Casey v. Moore, 386
F.3d 896, 911 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005)
(reference to "constitutional error" and deprivation of "right to
confront witnesses" insufficient where petitioner "did not expressly
refer to the federal constitution or to any of its provisions").
Therefore, Ground Three of the Petition is unexhausted.


        D.   **Grounds Two and Four of the Petition Are Exhausted.**


        In Ground One of Petitioner's California Supreme Court petition
in case number S157389, Petitioner alleged that his counsel provided
ineffective assistance in violation of the Sixth Amendment by
assertedly failing to call two witnesses (see Respondent's Lodgment
11, attached typed Court of Appeal petition, pp. 3-4).  Respondent

1  does not contend that this claim, contained in Ground Two of the
2  Petition, is unexhausted.

3

4      However, in the last paragraph of Petitioner's Fifth Amendment
5  claim asserted in his California Supreme Court petition in case number
6  S157389, Petitioner alleged another, different claim of ineffective
7  assistance of counsel:

8

9          This violation would also go to the ineffective
10         assistance in that counsel did not object, and subsequently
11         stipulated to the fact that petitioner was the person
12         referred to in the evidence presented for the purpose of
13         prior convictions alleged.

14

15  (Respondent's Lodgment 11, attached typed Court of Appeal petition,
16  p. 6).

17

18     Respondent contends Petitioner failed to exhaust this claim
19  because Petitioner assertedly did not refer to the federal
20  Constitution or cite any case that might have alerted the California
21  Supreme Court to the federal nature of the claim (Answer, p. 22).
22  However, while Petitioner may have misplaced this claim of ineffective
23  assistance in his Fifth Amendment discussion (Ground Four), rather
24  than placing the claim with his Sixth Amendment discussion (Ground
25  Two), a fair reading of the petition concludes that Petitioner
26  intended to allege this claim of ineffective assistance as part of his
27  previously alleged Sixth Amendment claim.   See Sanders v. Ryder, 342
28  F.3d 991, 1000 (9th Cir. 2003) (where state supreme court petition

1 | alleged ineffective assistance of counsel without mentioning the Sixth

2 | Amendment, but in reply brief to state supreme court petitioner cited

3 | the Sixth Amendment and _Strickland_, petitioner exhausted claim of

4 | ineffective assistance of counsel); _Davis v. Silva_, 511 F.3d at 1009

5 | (court must construe _pro se_ petition liberally in determining

6 | exhaustion).   Therefore, Ground Four of the Petition is exhausted.

7 |

8 |          **E.    Ground Five of the Petition Is Unexhausted.**

9 |

10 |       In his California Supreme Court petition in case number S157389,

11 | Petitioner alleged that the evidence was insufficient to prove the

12 | prior prison term enhancements because the evidence assertedly did not

13 | show Petitioner served "one year or more in prison for the offense"

14 | (Respondent's Lodgment 11, attached typed Court of Appeal petition,

15 | p. 4).   Specifically, Petitioner alleged:

16 |

17 |          While the Trial Court did indeed take concern over the

18 |          Proving of the alleged prison priors, at no time did not

19 |          concern of whether or not the element concerning whether or

20 |          not "the defendant served one year or more in prison for the

21 |          offense", be addressed.   In that this is an element which

22 |          must be proved beyond a reasonable doubt.   There must be

23 |          some evidence of this fact presented to the Court, when an

24 |          element which is necessarily required in order to enhance

25 |          the sentence must be proved, said proof cannot exsist [sic]

26 |          without being presented and considered.

27 |

28 | (Respondent's Lodgment 11, attached typed Court of Appeal petition,

1  p. 4) (original emphasis).  This claim is unexhausted because

2  Petitioner did not advise the California Supreme Court of the federal

3  nature of the claim.  See Fields v. Waddington, 401 F.3d at 1021.

4

5       Petitioner also alleges in Ground Five of the present Petition

6  that his counsel provided ineffective assistance during the trial on

7  the prior prison term allegations (Pet. Mem., p. 9).  Petitioner did

8  not present this claim to the California Supreme Court (see

9  Respondent's Lodgment 11; Respondent's Supplemental Lodgment 13).

10  Ground Five of the Petition is unexhausted.

11

12  **II.   A Stay Is Inappropriate.**

13

14       In Rhines v. Weber, 544 U.S. 269 (2005) ("Rhines"), the United

15  States Supreme Court held that, in "limited circumstances," a district

16  court has discretion to stay and hold in abeyance a mixed habeas

17  corpus petition pending exhaustion of state remedies.  Id. at 277.

18  Stay and abeyance is "only appropriate when the district court

19  determines there was good cause for the petitioner's failure to

20  exhaust his claims first in state court."  Id.; see also Jackson v.

21  Roe, 425 F.3d 654, 660-61 (9th Cir. 2005).  The Rhines Court held

22  that, even if a petitioner had good cause for that failure, the

23  district court would abuse its discretion if it were to grant a stay

24  when the unexhausted claims were "plainly meritless."  Rhines, 544

25  U.S. at 277 (citation omitted).  Under Rhines, "it likely would be an

26  abuse of discretion for a district court to deny a stay and to dismiss

27  a mixed petition if the petitioner had good cause for his failure to

28  exhaust, his unexhausted claims are potentially meritorious, and there

16

1  is no indication that the petitioner engaged in intentionally dilatory
2  litigation tactics." __Rhines__, 544 U.S. at 278.

4      Petitioner does not seek a stay under __Rhines__.  Moreover, the
5  record does not show a stay would be appropriate.  Petitioner has not
6  demonstrated, and the record does not show, that Petitioner had any
7  good cause for his failure to exhaust his unexhausted claims.  Indeed,
8  Petitioner offers no explanation for his failure to exhaust his
9  unexhausted claims.  In any event, for the reasons discussed below,
10 Petitioner's unexhausted claims are not "potentially meritorious," and
11 are "plainly meritless."

13 **III. __Petitioner Is Not Entitled to Habeas Relief on the Merits of the__**
14     **__Claims Raised in the Petition.__**

16     **A.    __Standard of Review__**

18     A federal court may not grant an application for writ of habeas
19 corpus on behalf of a person in state custody with respect to any
20 claim that was adjudicated on the merits in state court proceedings
21 unless the adjudication of the claim: (1) "resulted in a decision that
22 was contrary to, or involved an unreasonable application of, clearly
23 established Federal law, as determined by the Supreme Court of the
24 United States"; or (2) "resulted in a decision that was based on an
25 unreasonable determination of the facts in light of the evidence
26 presented in the State court proceeding."  28 U.S.C. § 2254(d) (as
27 amended); __see also__ Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002);
28 Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S.

1   362, 405-09 (2000).

2

3        "Clearly established Federal law" refers to the governing legal

4   principle or principles set forth by the Supreme Court at the time the

5   state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63

6   (2003).  A state court's decision is "contrary to" clearly established

7   Federal law if: (1) it applies a rule that contradicts governing

8   Supreme Court law; or (2) it "confronts a set of facts. . . materially

9   indistinguishable" from a decision of the Supreme Court but reaches a

10  different result.  See Early v. Packer, 537 U.S. at 8 (citation

11  omitted); Williams v. Taylor, 529 U.S. at 405-06.

12

13       Under the "unreasonable application prong" of section 2254(d)(1),

14  a federal court may grant habeas relief "based on the application of a

15  governing legal principle to a set of facts different from those of

16  the case in which the principle was announced."  Lockyer v. Andrade,

17  538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

18  U.S. at 24-26 (state court decision "involves an unreasonable

19  application" of clearly established federal law if it identifies the

20  correct governing Supreme Court law but unreasonably applies the law

21  to the facts).

22

23       A state court's decision "involves an unreasonable application of

24  [Supreme Court] precedent if the state court either unreasonably

25  extends a legal principle from [Supreme Court] precedent to a new

26  context where it should not apply, or unreasonably refuses to extend

27  that principle to a new context where it should apply."  Williams v.

28  Taylor, 529 U.S. at 407 (citation omitted).

1      "In order for a federal court to find a state court's application

2  of [Supreme Court] precedent 'unreasonable,' the state court's

3  decision must have been more than incorrect or erroneous." Wiggins v.

4  Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

5  court's application must have been 'objectively unreasonable.'"  Id.

6  at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062,

7  1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003).

8

9      In applying these standards, this Court looks to the last

10  reasoned state court decision.  See Franklin v. Johnson, 290 F.3d

11  1223, 1233 n.3 (9th Cir. 2002).  Where no such reasoned opinion

12  exists, as where a state court rejected a claim in an unreasoned

13  order, this Court must conduct an independent review to determine

14  whether the decisions were contrary to, or involved an unreasonable

15  application of, "clearly established" Supreme Court precedent.  See

16  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

17

18      B.    **Petitioner Is Not Entitled to Habeas Relief on His Challenge**

19            **to the Sufficiency of the Evidence.**

20

21      On habeas corpus, the Court's inquiry into the sufficiency of

22  evidence is limited.  Evidence is sufficient unless the charge was "so

23  totally devoid of evidentiary support as to render [Petitioner's]

24  conviction unconstitutional under the Due Process Clause of the

25  Fourteenth Amendment."  Fish v. Cardwell, 523 F.2d 976, 978 (9th Cir.

26  1975), cert. denied, 423 U.S. 1062 (1976) (citations and quotations

27  omitted).  The evidence is to be considered "in the light most

28  favorable to the prosecution."  Wright v. West, 505 U.S. 277, 296

19

1   (1992) (plurality opinion) (quoting Jackson v. Virginia, 443 U.S. 307,

2   319 (1979)).  A conviction cannot be disturbed unless the Court

3   determines that no "rational trier of fact could have found the

4   essential elements of the crime beyond a reasonable doubt." Wright v.

5   West, 505 U.S. at 284; Jackson v. Virginia, 443 U.S. at 317.  "The

6   reviewing court must respect the exclusive province of the fact finder

7   to determine the credibility of witnesses, resolve evidentiary

8   conflicts, and draw reasonable inferences from proven facts." United

9   States v. Hubbard, 96 F.3d 1223, 1226 (9th Cir. 1996); see also Jones

10  v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).  "[T]he prosecution need

11  not affirmatively rule out every hypothesis except that of guilt."

12  Wright v. West, 505 U.S. at 296 (citation and internal quotations

13  omitted).  This Court cannot grant habeas relief on Petitioner's

14  challenge to the sufficiency of the evidence unless the state court's

15  decision constituted an "unreasonable application of" Jackson v.

16  Virginia.  See Juan H. v. Allen, 408 F.3d 1262, 1274-75 (9th Cir.

17  2005), cert. denied, 546 U.S. 1137 (2006).

18

19      "Proof of the crime of receiving stolen property requires

20  establishment that the property in question was stolen, that the

21  defendant was in possession of it, and that the defendant knew the

22  property to be stolen." People v. Anderson, 210 Cal. App. 3d 414,

23  420-21, 258 Cal. Rptr. 482 (1989) (citations omitted).  Here, the

24  evidence was undisputed that the fire extinguisher, notebook and

25  change were removed from the victims' trailer without the victims'

26  consent, and that Petitioner was found in possession of these items.

27  Petitioner contends, however, that the evidence did not suffice to

28  show he knew the items were stolen (Pet. Mem., pp. 4-5).  Petitioner

1   also contends there was an innocent explanation for his behavior,

2   alleging that "Petitioner could have found the items in a dumpster,

3   where such tiems [sic] had been discarded by someone else, perhaps the

4   person who had broken into the trailer that morning" (Pet. Mem.,

5   p. 4).

6

7        The Court of Appeal rejected Petitioner's challenge to the

8   sufficiency of the evidence, ruling that the evidence sufficed to show

9   Petitioner knew the property was stolen (see Respondent's Lodgment 8

10  at pp. 4-5; People v. Yates, 2007 WL 2183126 at *2).  The Court of

11  Appeal cited California case law to the effect that the trier of fact

12  may infer the knowledge element of the offense from the defendant's

13  failure to explain the defendant's possession of stolen property or

14  from suspicious circumstances (Respondent's Lodgment 8, pp. 4-5;

15  People v. Yates, 2007 WL 2183126, at *2).  The Court of Appeal cited

16  and quoted People v. Alvarado, 133 Cal. App. 3d 1003, 1019-20, 184

17  Cal. Rptr. 483 (1982) ("In routine circumstances the knowledge element

18  is inferred from the defendant's failure to explain how he came to

19  possess a stolen item or his offer of an unsatisfactory explanation or

20  from suspicious circumstances attendant upon his possession of the

21  item. [citations]."), and People v. Roland, 270 Cal. App. 2d 639, 647,

22  76 Cal. Rptr. 72 (1969), cert. denied, 396 U.S. 935 (1969) ("[T]he

23  possession of stolen property, accompanied by suspicious

24  circumstances, will justify the drawing of an inference that it was

25  received with knowledge that it had been stolen. [citation].")

26  (Respondent's Lodgment 8, pp. 4-5; People v. Yates, 2007 WL 2183126,

27  at *2).

28  ///

21

1    "Possession of recently stolen property is so incriminating that

2    to warrant conviction there need only be, in addition to possession,

3    slight corroboration in the form of statements or conduct of the

4    defendant tending to show his guilt." People v. McFarland, 58 Cal.2d

5    748, 754, 26 Cal. Rptr. 473, 376 P.2d 449 (1962). "Possession of

6    stolen property, accompanied by no explanation or an unsatisfactory

7    explanation of the possession, or by suspicious circumstances, will

8    justify an inference that the goods were received with knowledge that

9    they had been stolen." Id. (citations and internal quotations

10   omitted); see also People v. Moses, 217 Cal. App. 3d 1245, 1261, 266

11   Cal. Rptr. 538 (1990) ("[s]ince direct evidence of defendant's

12   knowledge rarely exists, circumstantial evidence often comes from

13   possession of stolen property accompanied by no explanation or

14   unsatisfactory explanation, or by suspicious circumstances")

15   (citations and internal quotations omitted); see generally Barnes v.

16   United States, 412 U.S. 837, 845-46 (1973) (evidence that petitioner

17   possessed recently stolen Treasury checks payable to persons he did

18   not know, and that petitioner "provided no plausible explanation for

19   such possession consistent with innocence," was "clearly sufficient to

20   enable the jury to find beyond a reasonable doubt that petitioner knew

21   the checks were stolen").[3]

22   ///

23   ///

24

25       [3]    Contrary to Petitioner's assertion (see Traverse,

26   p. 2), allowing a jury to infer guilt from possession of recently
     stolen property in such circumstances does not relieve the

27   prosecution of its burden of proof or allow the jury to infer
     guilt based on the defendant's failure to testify.  See Barnes v.

28   United States, 412 U.S. 837, 841-47 & n.12 (1973).

22

1    The evidence showed: (1) Petitioner refused to comply with

2  multiple demands that Petitioner leave the property and refused to

3  respond to inquiries concerning his presence and intentions; (2) the

4  trailer was broken into during the period between approximately

5  6:45 a.m. and 8:00 a.m., during which time Petitioner was on the

6  property; (3) Petitioner was found in possession of the fire

7  extinguisher, notebook and change kept in the trailer; and

8  (4) Petitioner gave a less than compelling explanation for his

9  presence on the property (i.e., that Petitioner supposedly was

10  returning a resident's keys).  From this evidence, a rational juror

11  could infer that Petitioner knew the fire extinguisher, notebook and

12  change in his possession were stolen.  See People v. Anderson, 210

13  Cal. App. 3d at 432 (evidence supported conviction for receiving

14  stolen property, where defendant gave no explanation for his

15  possession of stolen property and, when apprehended, was unresponsive,

16  uncooperative and "acted like a criminal").[4]

17

18    Even assuming, arguendo, a juror rationally also could have

19  inferred from the evidence that Petitioner found the items in his

20  possession in the dumpster, the jury was free to decline to make this

21  _____

22    [4]    Contrary to Petitioner's assertion (see Traverse,
p. 2), Petitioner's acquittal on the burglary charge did not
23  foreclose his conviction on the charge of receiving stolen
property.  People v. Beck, 71 Cal. App. 2d 637, 640, 163 P.2d 41
24  (1945) (although defendant was acquitted of burglary, his
possession of stolen items under suspicious circumstances
25  warranted his conviction for receiving stolen property); see also
United States v. Hughes Aircraft Co., 20 F.3d 974, 977-78 (9th
26  Cir.), cert. denied, 513 U.S. 987 (1994) (even a flatly
inconsistent jury verdict is insulated from review because, inter
27  alia, the inconsistency may have been the product of lenity);
accord United States v. Powell, 469 U.S. 57, 68-69 (1994).
28

1  inference, and to believe instead the evidence consistent with guilt.

2  See Wright v. West, 505 U.S. at 296 ("the prosecution need not

3  affirmatively rule out every hypothesis except that of guilt")

4  (citation and internal quotations omitted); United States v. Miller,

5  688 F.2d 652, 663 (9th Cir. 1982) ("Circumstantial evidence is

6  sufficient to sustain a conviction, and the government's evidence need

7  not exclude every reasonable hypothesis consistent with innocence.")

8  (citations omitted).  On habeas review of a challenge to the

9  sufficiency of the evidence, "a federal habeas corpus court faced with

10 a record of historical facts that supports conflicting inferences must

11 presume - even if it does not affirmatively appear in the record -

12 that the trier of fact resolved any such conflicts in favor of the

13 prosecution, and must defer to that resolution."  Jackson v. Virginia,

14 443 U.S. at 326.  Because a rational juror could have found beyond a

15 reasonable doubt that Petitioner knew the fire extinguisher, notebook

16 and change were stolen, this Court cannot disturb the jury's

17 determination of guilt.  See id.; United States v. Hubbard, 96 F.3d at

18 1226.

19

20     In sum, the evidence was sufficient to support Petitioner's

21 conviction.  Accordingly, the Court of Appeal's rejection of

22 Petitioner's challenge to the sufficiency of the evidence was not

23 contrary to, or an objectively unreasonable application of, any

24 clearly established Federal law as determined by the United States

25 Supreme Court.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled

26 to habeas relief on Ground One of the Petition.

27 ///

28 ///

24

C.    **Petitioner's Claims of Ineffective Assistance of Counsel**
      **Lack Merit.**


      1.    **Governing Legal Standards**


     To establish ineffective assistance of counsel, Petitioner must
prove: (1) counsel's representation fell below an objective standard
of reasonableness; and (2) there is a reasonable probability that, but
for counsel's errors, the result of the proceeding would have been
different.  Strickland v. Washington, 466 U.S. 668, 688, 694, 697
(1984) ("Strickland").  A reasonable probability of a different result
"is a probability sufficient to undermine confidence in the outcome."
Id. at 694.  The court may reject the claim upon finding either that
counsel's performance was reasonable or the claimed error was not
prejudicial.  Id. at 697; Rios v. Rocha, 299 F.3d 796, 805 (9th Cir.
2002) ("Failure to satisfy either prong of the Strickland test
obviates the need to consider the other.") (citation omitted).  For
purposes of habeas review under 28 U.S.C. section 2254(d), Strickland
sets forth clearly established Federal law as determined by the United
States Supreme Court.  See Williams v. Taylor, 529 U.S. at 391
(citation and quotations omitted).


     Review of counsel's performance is "highly deferential" and there
is a "strong presumption" that counsel rendered adequate assistance
and exercised reasonable professional judgment.  Williams v. Woodford,
384 F.3d 567, 610 (9th Cir. 2004), cert. denied, 546 U.S. 934 (2005)
(quoting Strickland, 466 U.S. at 689).  The court must judge the
reasonableness of counsel's conduct "on the facts of the particular

1    case, viewed as of the time of counsel's conduct." Strickland, 466
2    U.S. at 690.   The court may "neither second-guess counsel's decisions,
3    nor apply the fabled twenty-twenty vision of hindsight." Karis v.
4    Calderon, 283 F.3d 1117, 1130 (9th Cir. 2002), cert. denied, 539 U.S.
5    958 (2003) (citation and quotations omitted); see Yarborough v.
6    Gentry, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees
7    reasonable competence, not perfect advocacy judged with the benefit of
8    hindsight.") (citations omitted).   The test is "only whether some
9    reasonable lawyer . . . could have acted, in the circumstances, as
10   defense counsel acted." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th
11   Cir.) (citations and quotations omitted), rev'd on other grounds, 525
12   U.S. 141 (1998); see also Babbitt v. Calderon, 151 F.3d 1170, 1173-74
13   (9th Cir. 1998), cert. denied, 525 U.S. 1159 (1999) (relevant inquiry
14   under Strickland is not what defense counsel could have pursued, but
15   rather whether the choices made by defense counsel were reasonable)
16   (citation and quotations omitted); Morris v. California, 966 F.2d 448,
17   456-57 (9th Cir.), cert. denied, 506 U.S. 831 (1992) (if the court can
18   conceive of a reasonable tactical reason for counsel's action or
19   inaction, the court need not determine the actual explanation).
20   Petitioner bears the burden to "overcome the presumption that, under
21   the circumstances, the challenged action might be considered sound
22   trial strategy." Strickland, 466 U.S. at 689 (citation and quotations
23   omitted).

24

25        **2.   Discussion**

26

27        Petitioner alleges: "In the instant case, Defense Counsel
28   submitted a 'Witness List' of two persons, one being the investigator

26

1 | for the Public Defenders Office and the second being a party/witness
2 | to the incident at issue, who would have given testimony showing that
3 | Petitioner was in fact in the process of attempting to return a
4 | portion of the items he discovered while 'Dumpster Diving.'" (Pet.
5 | Mem., p. 6).  In the Traverse, Petitioner contends counsel failed to
6 | call as a witness the woman to whom Petitioner allegedly was
7 | attempting to "return items discovered while 'Dumpster Diving' due to
8 | his believing that they may have been discarded in error" (Traverse,
9 | p. 3).  According to Petitioner, the woman's testimony "would have
10 | shown the jury that [Petitioner] was not aware of to whom the other
11 | items allegedly belonging to Mrs. Schuessler belonged, or that they
12 | were stolen" (Traverse, p. 3).  The record indicates that Petitioner's
13 | counsel filed a witness list referencing two witnesses: the Riverside
14 | County Sheriff's Department custodian of records, and defense
15 | investigator Christopher Schaper as a rebuttal witness (C.T. 69).
16 |
17 |      Petitioner does not identify the defense investigator by name,
18 | but his reference to the witness list suggests Petitioner refers to
19 | Mr. Schaper.  It is unclear whether Petitioner alleges that the
20 | defense investigator, as well as the "party/witness," would have
21 | "given testimony showing that Petitioner was in fact in the process of
22 | attempting to return a portion of the items he discovered while
23 | 'Dumpster Diving.'"  However, Petitioner does not suggest that the
24 | investigator was a percipient witness to the incident, and does not
25 | indicate how the investigator could have given competent testimony
26 | concerning Petitioner's alleged attempt to return items purportedly
27 | discovered while "Dumpster Diving."  See Ceja v. Stewart, 97 F.3d
28 | 1246, 1255 (9th Cir. 1996), cert. denied, 522 U.S. 971 (1997)

1  (rejecting <u>Strickland</u> claim where petitioner failed to explain what

2  compelling evidence would have been uncovered had counsel interviewed

3  more witnesses); <u>see also</u> <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284, 298

4  (3d Cir.), <u>cert. denied</u>, 502 U.S. 902 (1991) (petitioner cannot

5  satisfy <u>Strickland</u> standard by "vague and conclusory allegations that

6  some unspecified and speculative testimony might have established his

7  defense").

8

9       There were several references to a defense investigator during

10  the trial.  During the cross-examination of Mrs. Schuessler,

11  Petitioner's counsel asked whether Mrs. Schuessler recalled speaking

12  with a defense investigator (R.T. 40).  Mrs. Schuessler said she did

13  not recall the exact date the gentleman had come to her house, and did

14  not recall that his name was Christopher Shaper [sic] (R.T. 40).

15  Mrs. Schuessler admitted she had a conversation with the investigator,

16  and that she may have told the investigator that her trailer had been

17  broken into several times before (R.T. 40-41).  On re-direct, the

18  prosecutor asked Mrs. Schuessler if she ever told a defense

19  investigator that she observed new pry marks on the door of the

20  trailer, and she replied that she did not think she had (R.T. 45).

21  Mrs. Schuessler also testified that a defense investigator took some

22  photos of her trailer (R.T. 47).  Petitioner has failed to show that

23  Mr. Schaper or any other defense investigator could have provided any

24  testimony that would have aided Petitioner.  Testimony that Mrs.

25  Schuessler told Mr. Schaper that her trailer had been broken into

26  several times before would have been cumulative, because she admitted

27  it had been broken into three times before (R.T. 41).  <u>See</u> <u>Delgadillo</u>

28  <u>v. Woodford</u>, ___ F.3d ___, 2008 WL 2246473, at *9 n.4 (9th Cir. June

3, 2008) (failure to elicit cumulative testimony did not violate Strickland).  Testimony that Mrs. Schuessler told an investigator that she saw new pry marks on the door would not have assisted Petitioner. Testimony that an investigator photographed the trailer was not exculpatory.  Petitioner's counsel cannot be faulted for failing to call a witness whose testimony would not have advanced Petitioner's defense.  See Dows v. Wood, 211 F.3d 480, 486 (9th Cir.), cert. denied, 531 U.S. 908 (2000) (rejecting claim of ineffective assistance where petitioner failed to produce evidence that witness would have provided helpful evidence for the defense).  For the same reasons, Petitioner has not shown a reasonable probability of a different result had counsel called a defense investigator.

Petitioner's reference to the "party/witness" appears to concern the woman residing in space 131.  Petitioner has not shown that the woman residing in space 131 could have testified competently that Petitioner had obtained the fire extinguisher, notebook or change from the dumpster.  There was no evidence that Petitioner was attempting to return, to that person or to anyone else, the fire extinguisher, notebook and change found in Petitioner's possession.  These items undisputedly belonged to the Schuesslers.  Petitioner said only that he was attempting to return a key or keys to the woman residing in space 131.  Petitioner has not shown counsel's ineffectiveness in failing to call this witness or any resulting prejudice.  See Ceja v. Stewart, 97 F.3d at 1255; Zettlemoyer v. Fulcomer, 923 F.2d at 298.

In sum, the state courts' rejection of Petitioner's claims of ineffective assistance were not contrary to, or an unreasonable

1  application of, any clearly established Federal law as determined by

2  the United States Supreme Court.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner

3  is not entitled to habeas relief on Ground Two of the Petition.

4

5      D.   <u>**Petitioner's Unexhausted Claim That the Trial Court**</u>

6           <u>**Assertedly Violated the Constitution By Admitting Propensity**</u>

7           <u>**Evidence Is Not "Colorable."**</u>

8

9      In Ground Three, Petitioner alleges that the trial court violated

10  the Constitution by admitting "impeachment" testimony not authorized

11  by California Evidence Code section 1101(b) (Pet. Mem., pp. 6-7).

12  Although Petitioner's claim is somewhat unclear, the only testimony

13  admitted pursuant to section 1101(b) was Hernandez' testimony

14  concerning the 2001 incident in which Petitioner assertedly admitted

15  taking Hernandez' car (<u>see</u> R.T. 17-21).  It appears Petitioner

16  challenges the trial court's admission of Hernandez' testimony as

17  improper propensity evidence (<u>see</u> Pet. Mem., p. 7).

18

19      Although, as indicated above, Ground Three is unexhausted, the

20  Court may deny an unexhausted claim on the merits if it is not

21  "colorable."  <u>See</u> <u>Cassett v. Stewart</u>, 406 F.3d 614, 623-24 (9th Cir.

22  2005), <u>cert. denied</u>, 546 U.S. 1172 (2006) (court may dismiss

23  unexhausted claim on the merits where claim is not "colorable");

24  28 U.S.C. § 2254(b)(2).

25

26      The United States Supreme Court has expressly declined to decide

27  whether the use of propensity evidence in a criminal trial violates

28  the Constitution.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 75 n.5 (1991).

1  Therefore, Petitioner may not obtain habeas relief on his challenge to

2  the admission of alleged propensity evidence under the standard of

3  review set forth in 28 U.S.C. section 2254(d).  See Alberni v.

4  McDaniel, 458 F.3d 860, 864 (9th Cir. 2006), cert. denied, 127 S. Ct.

5  1834 (2007) (rejecting habeas petitioner's challenge to introduction

6  of propensity evidence in light of Supreme Court's express refusal to

7  consider the issue in Estelle v. McGuire).  Accordingly, because the

8  claim alleged in Ground Three is not colorable, the Court should deny

9  and dismiss Ground Three of the Petition on the merits.

10

11          **E.    Petitioner's Challenges Relating to the Trial Court's**

12               **Fingerprinting Order Do Not Merit Habeas Relief.**

13

14       The trial court's fingerprinting order did not violate

15  Petitioner's Fifth Amendment privilege against self-incrimination.

16  See New York v. Quarles, 467 U.S. 649, 671 (1984) ("interrogation

17  which provides leads to other evidence does not offend the values

18  underlying the Fifth Amendment privilege any more than the compulsory

19  taking of blood samples, fingerprints, or voice exemplars, all of

20  which may be compelled") (emphasis added); United States v. Velarde-

21  Gomez, 269 F.3d 1023, 1030-31 (9th Cir. 2001) (en banc); Commonwealth

22  of Northern Mariana Islands v. Bowie, 243 F.3d 1109, 1120 n.5 (9th

23  Cir. 2001).  Therefore, the Fifth Amendment claim contained in Ground

24

25

26

27

28

31

**F.   Petitioner's Unexhausted Challenges Regarding the Imposition of the Prior Prison Term Enhancements Are Not Colorable.**

In Ground Five, Petitioner contends the trial court improperly imposed several prior prison term enhancements in the absence of evidence that Petitioner served a prison term of at least a year in each case (Pet. Mem., p. 9; Traverse, p. 6). Petitioner also contends his counsel provided ineffective assistance at the trial on the prior prison term allegations, apparently by failing to contend that the evidence did not show Petitioner served a prison term of at least a year in each case (Pet. Mem., p. 9). Although these claims are unexhausted, the Court may deny an unexhausted claim on the merits if the claim is not colorable. See Cassett v. Stewart, 406 F.3d at 623-24.

These claims are not colorable. California Penal Code section 667.5(f) provides that a prior conviction of a felony "shall include a conviction in another jurisdiction for an offense which, if committed in California, is punishable by imprisonment in the state prison if the defendant served one year or more in prison for the offense in the other jurisdiction." However, section 667.5 imposes no such one-year prison service requirement for prison terms imposed as a result of California convictions. See In re McCarthy, 176 Cal. App. 3d 593, 595, 222 Cal. Rptr. 291 (1986) ("It will be seen that section 667.5's one-year enhancement will attach when the convicted defendant has served *any* prior felony prison term in California, but only if he has *elsewhere* served a prior felony prison term of *one year or more*.") (original emphasis; holding different treatment of out-of-state prison

33

1  terms did not violate equal protection).  Because all of Petitioner's

2  prior prison terms derived from California convictions (see R.T. 212-

3  26; C.T. 73-73, 125), California law did not require proof that

4  Petitioner served those terms for one year or more.

5

6      Petitioner's companion claim of ineffective assistance is also

7  not colorable.  Because California law did not require proof that

8  Petitioner served one year or more in prison for each of the prior

9  prison term enhancements, Petitioner's counsel cannot be faulted for

10  failing to make the meritless argument Petitioner suggests.  See Rupe

11  v. Wood, 93 F.3d at 1445; Shah v. United States, 878 F.2d at 1162.

12

13      Because the claims in Ground Five are not colorable, Petitioner

14  is not entitled to habeas relief on these claims.

15

16                              RECOMMENDATION

17

18      For the foregoing reasons, IT IS RECOMMENDED that the Court issue

19  an Order: (1) approving and adopting this Report and Recommendation;

20  and (2) denying and dismissing the Petition with prejudice.

21

22          DATED: June 20, 2008.

23

24                    _____/s/_____

25                            CHARLES F. EICK
                        UNITED STATES MAGISTRATE JUDGE

26

27

28

1 | **NOTICE**

2 |     Reports and Recommendations are not appealable to the Court of

3 | Appeals, but may be subject to the right of any party to file

4 | objections as provided in the Local Rules Governing the Duties of

5 | Magistrate Judges and review by the District Judge whose initials

6 | appear in the docket number.  No notice of appeal pursuant to the

7 | Federal Rules of Appellate Procedure should be filed until entry of

8 | the judgment of the District Court.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28